Marvin D. BAKER, Plaintiff,

v.

The BOARD OF REGENTS OF
the STATE OF KANSAS, et
al., Defendants.

No. 88–4133–R.

United States District Court,
D. Kansas.

June 13, 1991.

Anthony D. Clum, Robert E. Keeshan,
Hamilton, Peterson, Tipton & Keeshan,
Topeka, Kan., for plaintiff.

Malcolm R. Burns, Lawrence, Kan., John
C. McFadden, Steven L. Ruddick, Kan.
Univ. Med. Center, Kansas City, Kan., for
defendants Kan. Bd. of Regents and Kan.
Univ. Med. School.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case involves a denial of admission to the University of Kansas Medical School (KUMS). Plaintiff alleges that he is a victim of reverse discrimination and of an unconstitutionally capricious interview system. Plaintiff also seeks to add a claim of discrimination on the basis of a physical disability. The main issue in this case is whether defendants are entitled to judgment on statute of limitations grounds. This issue is now before the court upon defendants' summary judgment motion.

Under FED.R.CIV.P. 56, summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510–11. A mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact and to avoid summary judgment. *Id.* at 252, 106 S.Ct. at 2512. "In essence ... the inquiry ... is ... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided [or so lacking] that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; see also, *Celotex Corp. v. Catrett, supra*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

The following uncontroverted facts supply the basis for defendants' summary judgment motion. Plaintiff received a letter dated January 29, 1986 from the Associate Dean of KUMS, Dr. Thorkil Jensen, which stated that plaintiff had not been selected for admission to KUMS for the fall semester of 1986. The text of the letter read:

> Admissions interviews for the 1986 first year class at the University of Kansas School of Medicine have been completed and the committees involved have voted on each applicant interviewed as to whether he or she should be accepted, denied acceptance or placed on the alternate list. By their action you have been denied admission to the 1986 medical school class.

> Be assured that I do understand your disappointment at not being accepted for a place in the next medical school class. Do not hesitate to contact me in person or by phone so that we can discuss this

matter in some detail. To make an appointment call 913–588–6597.

The composition of the class was not finally decided until the time school started in August 1986. Some people were selected from an alternate list at the time. However, the letter to plaintiff made it clear that he was not placed on the alternate list. This was the third consecutive year plaintiff had been denied admission to KUMS.

Plaintiff met with Dr. Jensen on February 12, 1986 regarding the reasons for his rejection. Plaintiff was told by Dr. Jensen that he was not accepted due to his interview for admission. Plaintiff stated that he planned to pursue the matter legally. In June 1986, plaintiff wrote to KUMS to see if the decision to deny him admission was "set in stone and they could not change it meaning I would have to do something different to get in." Plaintiff said in his deposition the purpose of the letter was to try to "talk to [Dr. Jensen] to see if there could be another way that it could be dealt with other than through litigation or if it was constitutionally just litigation that would be required to get them to change their decision or modify it." Plaintiff received no reply to this letter.

Plaintiff knew that KUMS produced a yearly roster, each August, with the names and pictures of students admitted for each class. Plaintiff had previously obtained one of the rosters for the admission year 1984–85.

On December 1, 1987, counsel for the University of Kansas wrote plaintiff's counsel in response to a request for information concerning the selection process for KUMS students. The letter stated that plaintiff had the highest cumulative GPA and MCAT score of any Kansan who was denied admission in 1986. Plaintiff was not aware of this fact until his counsel received this letter. However, on the basis of evidence presented during a preliminary injunction hearing in this case, it is clear plaintiff knew or could have learned in January 1986 or before, that he had an above average cumulative GPA and MCAT score for applicants to KUMS. The facts presented in the instant motion also support the conclusion that plaintiff knew his test scores were not a factor in the denial of his medical school application more than two years before he filed this lawsuit. As mentioned previously, plaintiff was told by Dr. Jensen in February 1986 that his interview, not his objective test scores, kept him from being admitted to KUMS. Plaintiff filed this lawsuit on June 14, 1988.

The court addressed the limitations issue in this case, as well as other issues, in an order denying plaintiff preliminary injunctive relief. This order is published at 721 F.Supp. 270 (D.Kan.1989). The statute of limitations was one factor among others causing the court to deny injunctive relief to plaintiff. The court has examined many other cases since that order and the court has noted, as have other courts, that some confusion and inconsistency exist in applying such concepts as accrual and equitable tolling. See *Cada v. Baxter Healthcare Corporation*, 920 F.2d 446, 451 (7th Cir. 1990); *Ebrahimi v. E.F. Hutton & Co.*, 852 F.2d 516, 520 n. 6 (10th Cir.1988). The court is now convinced that this case is time-barred and that defendants are entitled to summary judgment. In reaching this decision, we shall rely to some degree upon our previous discussion of the limitations issue at 721 F.Supp. 270. But, we shall not repeat most of the case authorities which were cited in that order.

■ We continue to believe that a two-year statute of limitations period should be applied to the federal law claims plaintiff has asserted under 42 U.S.C. §§ 1981 and 2000d. The same period would apply to the federal law claims under 42 U.S.C. § 1983 and 29 U.S.C. § 794 plaintiff has moved to add to the complaint. This limitations period is borrowed from K.S.A. 60–513(a)(4). See discussion at 721 F.Supp. at 274–75.

■ Plaintiff's cause of action accrued when he received the January 29, 1986 letter informing him that he would not be admitted to the next first-year class at KUMS. We reiterate our previous holding that federal law determines the standard for accrual in this case and that plaintiff's action accrued when plaintiff knew or had reason to know of the injury which is the

basis of the action, i.e., the denial of acceptance to KUMS. *Id.* at 275; see also, *Hamilton v. First Source Bank*, 895 F.2d 159, 163 (4th Cir.1990); *Chapman v. Homco, Inc.*, 886 F.2d 756, 758 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *Merrill v. Southern Methodist University*, 806 F.2d 600, 605 (5th Cir.1986); *Miller v. I.T. & T. Corp.*, 755 F.2d 20, 24 (2d Cir.) *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

 State law on tolling the statute of limitations must be followed if a state statute of limitations is being borrowed, unless the tolling rules are inconsistent with federal law or with the policy which the federal law seeks to implement. 721 F.Supp. at 275 (and cases cited therein). Plaintiff has the burden of establishing a basis for equitable tolling. *Id.*

Most federal circuit courts differentiate between equitable tolling and equitable estoppel. See, e.g., *Cada v. Baxter Healthcare Corporation, supra; Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir.1985). Kansas courts, however, generally use the term "equitable estoppel" to describe any equitable modification to the running of the statute of limitations. In Kansas, "equitable estoppel" requires a representation or course of conduct which amounts to an affirmative inducement sufficient to cause plaintiff to delay bringing an action. *Safeway Stores, Inc. v. Wilson*, 190 Kan. 7, 372 P.2d 551, 555 (1962); *Rex v. Warner*, 183 Kan. 763, 332 P.2d 572, 579 (1958); *Ferrell v. Ferrell*, 11 Kan.App.2d 228, 719 P.2d 1, 5 (1986); *Garrison v. Ban Ngoc Vu*, 8 Kan. App.2d 189, 653 P.2d 824, 828 (1982); *Coffey v. Stephens*, 3 Kan.App.2d 596, 598, 599 P.2d 310, 312 (1979); see also, *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, Syl. ¶¶ 4 and 5, 696 P.2d 936 (1985) ("A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed."); *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102, 1105 (1978) ("One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement.").

Federal courts seem to agree that actions taken by a defendant to prevent or delay a plaintiff from bringing suit constitute "equitable estoppel" and toll the running of the statute of limitations. This would not appear to differ from Kansas law. The application of the "equitable tolling" doctrine provides the greatest source of confusion and inconsistency in the federal case law and a possible difference with Kansas law.

The Seventh Circuit does not require misleading conduct or other effort by a defendant to prevent a lawsuit before there can be equitable tolling; tolling is permitted during the period when despite all due diligence a plaintiff is unable to obtain vital information bearing on the existence of his claim. *Cada v. Baxter Healthcare Corp., supra*, 920 F.2d at 451. In other words, equitable tolling in the Seventh Circuit may be based solely upon a plaintiff's excusable ignorance and not upon any conduct of a defendant. The Eleventh Circuit also appears to follow this view. *Cocke v. Merrill, Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir.1987).

The First, Second, Fourth and Eighth Circuits appear to require some level of affirmative conduct by defendant which prevents plaintiff from learning of his cause of action or exercising his rights to redress before equitable tolling will be allowed. E.g., *Jensen v. Frank*, 912 F.2d 517 (1st Cir.1990); *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986); *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 202–03 (4th Cir.1990); *Heideman v. PFL, Inc.*, 904 F.2d 1262 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). The Third Circuit may also follow this approach. Contrast *Hart v. J.T. Baker Chemical Corp.*, 598 F.2d 829 (3d Cir.1979) (no tolling where defendant did nothing to cause untimeliness) with *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) (tolling possible where plaintiff alleged that defendant deceived him into

postponing the filing of a claim); see also, *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748 (3d Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983).

The case of *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975) from the Fifth Circuit is sometimes cited for the proposition of tolling absent misconduct of a defendant. See *Cocke v. Merrill Lynch & Co., Inc., supra*. But, *Reeb* is also distinguished by some courts on the grounds that the *Reeb* court found misconduct by the defendant. See *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir.1982). In *Reeb*, the employer lulled a discharged employee from suing by offering a specious reason for the discharge. Later Fifth Circuit cases, *Merrill v. Southern Methodist University, supra*, and *Chapman v. Homco, Inc., supra*, appear to hold that the equitable tolling doctrine must focus upon more than simply a plaintiff's excusable ignorance about his cause of action.

The Tenth Circuit appears to require affirmative misconduct by a defendant before the doctrine of equitable tolling will be applied. In *Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344 (10th Cir.1982), the court noted it had recommended previously that the trial court examine the tolling-estoppel guidelines of the *Reeb* case. But, the court stated that the "primary issue" as to equitable tolling was whether plaintiff "did not file the required notices *because she was misled by defendant.*" 683 F.2d at 345 (emphasis added). In *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838 (10th Cir.1979), the court quoted a Second Circuit decision, *Smith v. American President Lines*, 571 F.2d 102, 109 (2d Cir.1978), for the proposition that tolling may be appropriate "only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights." In *Pike v. City of Mission*, 731 F.2d 655, 658 (10th Cir.1984), the Circuit described the federal law of tolling as requiring:

> a concealment of facts that would prevent [plaintiff] from knowing a cause of

action existed. 700 F.2d at 1301. Moreover, [plaintiff's] allegations must show that his ignorance was not the result of his lack of diligence, but was due to affirmative acts by defendants that would conceal the facts giving rise to the claim from a reasonably diligent plaintiff.

Similarly, the court announced in *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1481 (10th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989) that tolling of a Title VII time limit would only occur if there has been "active deception."

The type of conduct by a defendant which leads to tolling differs from case to case. A promise of help in finding another job in the company might toll the time limit for a discharged employee. *Cocke v. Merrill Lynch & Co., Inc., supra*, 817 F.2d at 1561–62. But, the suggestion of a mere possibility of a recall to employment has been held not to toll the running of the limitations period. *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 864 (4th Cir.) *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1981); *LaBeach v. Nestle Co., Inc.*, 658 F.Supp. 676, 686 (S.D.N.Y.1987) (quoting *Miller, supra*, 755 F.2d at 24). Giving misleading or pretextual reasons for a job action has been grounds for equitable tolling, if those reasons lulled the plaintiff into inaction. *Meyer v. Riegel Products Corp., supra*, 720 F.2d at 308; *Reeb v. Atlanta Economic Opportunity, Inc., supra; Chavez Colon v. Chairman of Bd. of Dirs. of FDIC*, 723 F.Supp. 842, 844 (D.P.R.1989); see also, *Jensen v. Frank, supra*, 912 F.2d at 521. On the other hand, refusing to give a reason for a job action or giving a nondiscriminatory reason for a job action has been held insufficient to toll a time limit for bringing a lawsuit. *Heideman v. PFL, Inc., supra; Olson v. Mobil Oil Corp., supra*, 904 F.2d at 1262; *Earnhardt v. Commonwealth of Puerto Rico, supra*.

Even circuit courts which hold that certain conduct by a defendant is required for equitable tolling have indicated that some exception to this rule may exist where it is impossible for a reasonably prudent person

to learn of the grounds for his cause of action. See *Miller v. I.T. & T. Corp., supra,* 755 F.2d at 24. One example of this is the area of pay discrimination where a plaintiff shows it was impossible to find out what comparable employees were being paid. See *Hamilton v. First Source Bank, supra,* 895 F.2d at 163–64.

■ In sum, the case law in the area of equitable tolling does not permit the court to define a "federal" standard which is applied throughout the nation. Nevertheless, under the facts of this case, the court believes the doctrine of equitable tolling would not save this action from the time bar, regardless of how the tolling standard is defined.

At the outset, the court notes there is no factual issue that defendants held out the possibility that plaintiff would be admitted to medical school after January 29, 1986. Plaintiff was informed that he was not placed on the list of alternates. Plaintiff was plainly and simply denied admission. Although plaintiff may have harbored some hope that he might still be admitted without litigation, defendants did nothing to instill this hope in plaintiff. Therefore, tolling the time limit for filing suit cannot be based on these grounds.

If there is a justification for tolling, it must be based upon some other conduct by defendants or some excusable ignorance of the plaintiff. But, we do not believe there is a material issue of fact in this area. Plaintiff was aware that he was in a protected class for the purposes of bringing a claim of reverse discrimination or a claim under 29 U.S.C. § 794.[1] He was aware that he was objectively qualified to enter KUMS. Subjective factors were keeping him out. He knew or could readily learn that minority students and students without a physical disability were granted admission to the school. He could reasonably assume or suspect that some of these students had lower objective scores than he had. He was also aware or could have

easily learned that defendants had an affirmative action officer. All of these facts were known to plaintiff or available to plaintiff at or about the time he was rejected for admission to KUMS. These grounds provide a prima facie case of illegal discrimination. See *Vaught v. R.R. Donnelley & Sons, Inc.,* 745 F.2d 407, 411 (7th Cir.1984).

Under the Kansas law of equitable tolling or equitable estoppel, the limitations period started running when plaintiff received the January 29, 1986 letter and was not interrupted unless defendants did something which amounted to an affirmative inducement to plaintiff to delay bringing the action. There is nothing in the facts which creates an issue of fact under this standard. Plaintiff has made reference to a general statement by defendants in the application materials to the effect that defendants admit students without regard to race or other invidious criteria. But, there is no evidence that this statement lulled plaintiff into inactivity. In fact, the evidence is otherwise. Plaintiff apparently anticipated or considered litigation almost immediately after he was denied admission, and later retained an attorney to examine the matter. Nor is there precedent in other cases that a general statement of that kind is sufficient to toll the statute of limitations.

Similarly, the evidence before the court is not sufficient to create an issue of fact under the standard of those circuits, including the Tenth Circuit, which require "active deception" or other misleading conduct by a defendant for equitable tolling. The evidence would not support a finding of such conduct. Nor would the evidence support a finding of reliance by plaintiff upon such conduct.

The evidence also would not support a finding of excusable ignorance, if this was the standard to be applied for equitable tolling. As stated above, we believe plaintiff had the information available to estab-

---

**1.** Plaintiff was also aware of the interview procedures and was told that his interview was the basis for his denial of admission. Therefore, plaintiff had knowledge of the necessary facts for bringing a claim challenging the constitutionality of the interview procedures more than two years before he brought this lawsuit.

lish a prima facie case of discrimination on or about the time that the limitations period commenced running, and certainly many months before this lawsuit was filed. In this regard, it is relevant that plaintiff had an attorney examining the matter on his behalf. See *Blumberg v. MCA Management Co., Inc.*, 848 F.2d 642, 645 (5th Cir. 1988) *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1353 (4th Cir.) *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

It is also relevant that plaintiff waited several months to file suit after learning that he had the highest scores of any Kansan not admitted. This fact was contained in a December 1, 1987 letter. While the court does not agree that plaintiff had insufficient grounds to bring suit until this time, it is important to note that the limitations period had not expired on December 1, 1987. It would not expire for approximately two months. But, plaintiff waited until June 14, 1988 to file his lawsuit. The doctrine of equitable tolling does not extend the time for bringing suit by the length of the tolling period. *Cada v. Baxter Healthcare Corp., supra*, 920 F.2d at 452.

> It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations.

*Id.;* see also, *Miller v. I.T. & T. Corp., supra*, 755 F.2d at 382; *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527 (11th Cir.) *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983); *McCoy v. Wesley Hospital and Nurse Training School*, 188 Kan. 325, 362 P.2d 841, 846–47 (1961). Plaintiff did not need six months to file suit after the December 1, 1987 letter. Plaintiff could have filed suit within two months and been within the limitations period without tolling. This is another reason to reject plaintiff's tolling argument.

In conclusion, the federal claims at issue in this case are governed by a two-year limitations period which began to run in late January or early February, 1986. Regardless of the standard of tolling employed, we do not believe the limitations period should be tolled in this case because: 1) defendants did not hold out the prospect that plaintiff's admission to KUMS would be reconsidered; 2) defendants did not deceive or lull plaintiff into inactivity through their actions in this case; 3) plaintiff was not excusably ignorant of the facts surrounding his cause of action in this case— indeed plaintiff was aware or could have become aware of the necessary facts for bringing this matter in January or February of 1986; 4) plaintiff was not in some extraordinary way prevented from learning the facts in this case; and 5) plaintiff did not bring suit within a reasonable time after learning the necessary facts, even if one assumes that plaintiff did not learn the necessary facts until after his counsel received the December 1, 1987 letter from counsel for the University of Kansas. Therefore, plaintiff filed this case after the limitations period for his federal claims expired.

For these reasons, defendants' motion for summary judgment is granted. For the same reasons, any federal claims advanced in plaintiff's motions to amend are futile because they are also time-barred. The court need not address any state law claims made in any pleading, including the motions to amend, as these claims should be dismissed pursuant to our discretion under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

IT IS SO ORDERED.